is represented by pro bono counsel. So just so that I don't forget, I want to thank in advance people that serve the court pro bono. It's helpful to the court to have, when someone's pro se, to have adequate briefing for the court to be able to decide. But we equally appreciate everyone that comes here for argument. But it is helpful to the court when we have counsel on both sides. So thank you in advance, everyone, for your argument. You can state your record, your appearance for the record, and proceed. Good morning. Good morning, Your Honors. May it please the court, Dr. Zwart for Plaintiff Appellant Cesario Medina. I would like to... Sorry, how do you pronounce your last name? Zwart? Zwart. Zwart? Yeah, it's Zwart. Okay, thank you. Not a very easy name. I would like to reserve aspirationally two minutes for rebuttal. All right, thank you. We are here because the defendants punished Mr. Medina for his status as a sex offender. To start with the Rule 12c error, after Medina was violently attacked and anally raped, Mr. Medina walked into the nurse's clinic bleeding from his face with a concussion, bruises, clouded eye. Something kind of weird in the record, and just because you only have 10 minutes, I want to sort of jump to that, that the nurse that is the subject matter of this particular lawsuit, it appears that it wasn't necessarily identified below, but it appears she didn't see your client until 10 months after this attack. Is that... Am I correct on that? It's unclear from record, but we're here on a Rule 12c motion to dismiss, so we're just... For Nurse Medina, we're just considering the plea dates, and the plea dates... Well, at the second pleading, the second pleading had that incident report attached to it, which shows the 10 months difference, and then it's... When you do the third one, it's... Everything's incorporated, so it seems like it's pretty easily before us. Am I wrong? I don't believe so. I don't believe there's a full record in terms of the timing exactly when... I agree that in the first few complaints, there's records showing, incident reports showing that Nurse Medina saw him 10 months later, but it's unclear. A nurse saw him right after the incident when he walked into this clinic. How much is that before us? Well, we're here on a Rule 12c motion, judgment of pleadings. We're taking... We're liberally construing the allegations in favor of Mr. Medina. I guess I'm sort of saying it's the elephant in the room, that someone... Did the government figure that out on appeal or something? Well, I think it's critical that they didn't raise this before the district court. They waited to on appeal to raise this issue. If they wanted to dismiss on these grounds, they should have moved for a summary judgment. And I think it's important to take into account Mr. Medina was proceeding pro se, and he didn't have an opportunity to conduct any discovery in terms of the medical records, who saw him and when. And I think if there's a dispute as to the nurse and the timing, that's something for the district court to resolve below when, if Mr. Medina's represented by counsel, he can conduct discovery. And I also want to point out that... It sounded like you just conceded that the incident report does disclose that Nurse Yamazaki did not treat Mr. Medina on the date of the rape. And if you did, then if we find that that report is incorporated by reference because it was attached to the Second Amendment complaint, which was then incorporated to the Third Amendment complaint, then the issue is resolved, right? I'm sorry, Your Honor, I didn't mean to imply that I conceded that, but I think that if there is a dispute, a district court should resolve that at discovery for that evidence. I don't think that that report shows that Mr. Medina was seen by a nurse right after the attack, and the allegations state plainly that was Nurse Yamazaki. If the report indicates Yamazaki saw him 10 months later, it could be a follow-up visit where she saw him again. So I don't think it's resolved from that report. Why couldn't we find... I'm going to call it the motion for summary judgment medical report, just for clarity. If we find that either Mr. Medina's allegations about fabrication by Nurse Yamazaki in the medical report is very frequently discussed throughout the Third Amendment complaint, then why can't we find those motion for summary judgment medical reports incorporated by reference? Well, that's a good question, Judge Koh. I don't think I've really thought that through, but is your point that because there's a fabrication, that the report isn't correct? Can you help me understand your question? So if Mr. Medina, which he does in the operative complaint, alleged that Nurse Yamazaki fabricated the contents of her medical report, and that is discussed throughout the complaint, then why isn't that medical report that Mr. Medina alleges was fabricated incorporated by reference? Thus, we could consider which nurse treated Mr. Medina on the date that he claims he was raped versus 10 months later. If you're taking the allegations that it's all fabricated, it's hard to establish which nurse saw him and when, and what is actually true. But he doesn't allege that the identity of the nurse was fabricated, right? He just says what they reported I said, which he said I slipped in the shower, and I think on the date of and I don't want as he was raped, and then he didn't report that he was raped until 10 months later. I think if the the reason we don't, I don't want to get into it too much, is because I think the record is unclear. After he was beat up, after he was raped, he saw a nurse, and that nurse denied treatment. If there's an issue. He said he slipped in the shower. Are you saying that he was on the date he was raped, he was denied treatment because he wasn't given a sexual assault rape when he didn't say he had been raped? If there's, well, I believe we're almost converting the record into a dispute of facts, and as a motion for summary judgment, I think we're still on a Rule 12c plea. I think we're taking the allegations as true. The nurse, he was attacked, he entered the clinic, and he was bleeding, he had all this pain, he had been anally raped, he was bleeding from his rectum, and the nurse denied him treatment based on that status. The records, if you want to get into the records, also records show a nurse saw him right after this attack. If there's a dispute about who the nurse is, that should be resolved at, you know, through discovery. He should have opportunity to conduct discovery before the district court to determine, to clear up that timeline, to clear up the identity of the nurse, to clear up who saw him. At page 117 of the excerpts of record, there's an incident report. The report indicates that when the rape occurred at the South Facility, plaintiff did not tell a South Facility nurse about the incident. But then, 10 months later, when plaintiff was at the North Facility, he told nurse Yamasaki. The incident report is attached to the plaintiff's Second Amended Complaint, and the plaintiff's Third Amended Complaint specifically states on the caption page that it adopts and incorporates all exhibits from the Second Amended Complaint. So, isn't the 10-month delay allegation part of the pleadings, and why can't we consider it? I still believe that that's construing the facts in favor of the defendants, and we're still at a liberal pleading stance. It's a pro se complaint. He's not represented by attorney. I agree. If he was represented by attorney and you drafted this, potentially you could construe these facts in favor of defendants. But I think it's important to resolve that the defendants did not raise these issues before the district court. The district court's error was just, the district court was merely considering a Rule 12c motion on the pleadings. Okay, so now regarding the motion to summary judgment ruling, you argue we should vacate the district court's summary judgment ruling, but under what authority can we vacate a summary judgment order that dealt with other defendants under a theory that nurse Yamasaki might someday file an MSJ that might make similar arguments as those other defendants? It feels pretty speculative to me. Ultimately, I admit it's an equitable argument, essentially that the Prison Litigation Reform Act is a system-wide determination. It applies to all the entire detention facility. There's not an individual defended by individual defended determination, and it's important to remember that the district court did not resolve the merits of the Prison Litigation Reform Act. There's no determination based on evidence that the grievance system is unavailable to Mr. Medina. The district court granted motion for summary judgment because Mr. Medina did not present any evidence. So on remand, Mr. Medina could marshal ample evidence that the system was unavailable, but that's a system-wide determination, so you basically have a conflict based on evidence showing that the system wasn't available through intimidation and harassment, but we have this prior ruling not based on any evidence, just based on the fact that he did not present any evidence. So there's a conflict there, and I think on remand it would make sense to have one hearing on the entire system. Can I ask you, the problem I have with the incident report is that Mr. Medina alleges that the incident report was a cover-up, in that cover-up, code of silence, obstruction of justice occurred on May 30, 2017, the date of the incident report, that one of the many failures was that they didn't properly report these officers who drafted the incident report didn't accurately report the complainant's testimony or change in order to cover up the misconduct. The officer defendants on May 30, 2017 fabricated statements that Medina never made to any of them. So would that be a challenge that we we might have with relying on the incident report, and it also doesn't name the nurse that Mr. Medina saw on the day of the rape? I think that's correct, Your Honor. I think there's just a lot of uncertainty about what exactly was recorded, who said what, who saw him, and when. So I think just looking at the allegations and the complaints is sufficient for a deliberate indifference to him. I want to say at least 30... But why, if Mr. Medina attached some of the medical complaint, which was incorporated into the 30-minute complaint, why can't we then consider the rest of the medical reports? Well, I'd like, in that instance, it'd be nice to have all the reports from the beginning of on, like this is to have a clear picture of the timeline of what exactly happened, and I think that's appropriate for the district court to consider. Like, if they want to raise that summary judgment, they're free to do that, but I really think there should be an opportunity to conduct discovery on remand so we can get a really clear picture of what happened and when. I don't think that's appropriate, a Rule 12c motion, and my time's almost up, and I would like to... Can I ask for one more question? I'll give you a little word about that. Thank you. Thank you for letting me ask this last question. One thing that concerns me is that Mr. Medina did four different complaints from April 16, 2019 through May 8th of 2020, and he never in any of those alleges that Nurse Yamasaki sexually assaulted him. But then all of a sudden, April 13, no, what is it? Yeah, April 13, 2021, he's now saying she sexually penetrated him with her finger digitally. He repeats that again January 20, 2022, and by the notice of appeal, he's now saying he's going to file criminal charges against her. You know, there is kind of a... There should be a truth-seeking mission here, and when, you know, when I see no allegations of sexual assault by a nurse for, what, multiple, four different complaints, and then all of a sudden I'm saying she raped me, like, you know, at a certain point, this, you know, I mean, he ends the notice of appeal with the plaintiff intends to file criminal sexual assault charges against Nurse Yamasaki with the DA's office shortly. Like, how are we supposed to... I think that's a great question, Judge Koh. I think it's the difficulty of proceeding of pro se complaints. No, but telling the truth is not something that you need a lawyer for. No, but as I understand it... I mean, there's some things that lawyers are very helpful, and you're doing all of the helpful lawyer work, but there's just certain things, like the elephant in the room, is there's really no evidence that she didn't see him until 10 months later, and then what Judge Koh is saying, then he comes up with these fantastical arguments that now suddenly the nurse sexually assaulted him. It's... To respond to Judge Koh's question, when I believe the allegation of the sexual assault is when he was examined, that she kind of didn't consensually insert her finger into his anus when she was examining him. So that's kind of where the sexual assault allegation comes from, where he wasn't, you know, that was not a treatment. But first he faults her, first she doesn't do x-rays, she's laughing allegedly and not taking him seriously on any of this, and then over time when the judge keeps saying you don't have enough, you don't have enough, then he comes up with it. That's not the kind of thing that you forget in the first instance. Potentially, Your Honor, but I think it's, we should just be looking at this as a 12C motion on the Third Amendment complaints, and those extra allegations are not within the court's consideration for this appeal, and I know my time's far gone, so. All right, well let me find out if any of the other judges have questions. Okay, we don't, so I'll give you your two minutes on rebuttal. Thank you, I appreciate that. Thank you. Okay, good morning. Good morning. Are you ready? Yes, Your Honor. May it please the court, release her for appellees Nurse Yamasaki and officers Dubois, Dubin, and De La Torre. First, I would like to address why the district court correctly dismissed the appellant's claim for deliberate indifference to medical needs for Nurse Yamasaki, and second, I will touch upon the district court correctly entering judgment in favor of appellee officers for failure to exhaust his administrative remedies under the Prison Litigation Reform Act. Well, it seems like this became a different case on appeal. Were you the one that figured out that this Nurse Yamasaki was 10 months later? I mean, that wasn't argued to the district court, right? Yes, Your Honor, it wasn't argued to the district court. I was not the attorney on that case. The case was transferred to my office after the motion for judgment on the pleadings was already filed. Someone finally read it? I don't know what happened before, but I think the reason why that there was no reference to the medical report as far as Nurse Yamasaki was because at that time it was a motion to dismiss. So just basically, or a motion for judgment on the pleadings, just based on the fact that the plaintiff's allegations contained in his complaint were insufficient. So I think they were just, I think the attorney at the time was just arguing what was contained in the complaint. Which is what we're supposed to do, right? We're not supposed to look at anything beyond a motion for judgment on the pleadings is the four corners of the complaint. So we're not supposed to look at anything else. Correct, but it is... And so how could we even look at whether the identity of the nurse on the date of the rape was the defendant? We can because it's actually in the appellant's record. He attached... But you just conceded on a motion for judgment on the pleadings. We only look at the four corners of the complaint. So we can't look at the full record and what came out during discovery. Actually, it wasn't provided in discovery. The appellant had attached it to his complaints. Well, when I look at what was attached to the complaint, I don't see anything that clearly shows who treated, right? If you look at the that's clear. Your honor, I can refer you to the appellant's exhibits attached to his first amendment complaint and his initial complaint. That provides the incident report where it says that that was when he was seen by nurse Yamasaki. It should be noted that it was nurse Yamasaki that treated him 10 months later. But we have to take all of his in his complaint as true. And he says this was fabricated. I mean, we can go through his allegations where he says this was cover up. The officers who drafted this incident report fabricated this. So how do we do both? How do we both assume his allegations are true, that this is a fabricated report, and then yet take it for the truth of what's asserted in this court? Well, we can go back to the deficiency of the pleading itself. In order for the appellant to sufficiently plead his claims, he has to supply the four essential elements under the Gordon case. And he did not do so within the pleading. So. But I guess I have a concern then about the fourth element of the Gordon case. What case says that if a patient comes to a medical treating professional and says, I was just anally raped, I have bleeding out of my rectum, I have all this numbness and pain in my arm, that you don't treat that those injuries and you don't do a sexual assault kit. I guess I don't see how as a matter of law, we find that's not delivered indifference as a matter of law at the pleading stage. So I can refer you to the complaint, the facts that were provided in appellant's complaint. Those facts were provided as appellant's perceptions of what he experienced immediately after the incident, not in how he presented in the nurse. The complaint actually states that he saw the nurse later that same day. There is no indication that the nurse was able to see him immediately after the incident. And it's appellant's own contention in his complaint that after the attack, when he bled from the mouth, he went to the restroom, washed his face. And he also alleges that... Wait, I'm sorry, is the argument you're making that someone has to come to you instantaneously after a rape for you to get treated, but if you go later the same day, but a few hours later, it's a different treatment regimen? No. I'm sorry, your honor. The argument I'm trying to make is that when he presented himself to the nurse, there is no allegation that the nurse did not treat his immediate injuries. There is nothing in his complaint that says he presented to the nurse with his mouth bleeding or that he had anything secreting from his anus at the time. That was what he provided that he experienced after the incident. Now, when he presented himself to the nurse, I'm not saying that she should treat him any differently, but there was no indication that he had a bloody mouth or that the nurse did not treat his immediate injuries. What can be determined by the complaint is that appellant specifically provides that he was, quote, physically evaluated. I'm sorry, I'm looking at the Third Amendment complaint and he's talking about noticing blood and white sticky secretion on the toilet paper after he wipes his rectum. I guess I'm unclear. What are you saying? You're saying that didn't. I'm unclear. What is your saying? What point are you making that Mr. Medina didn't allege these symptoms on the date of the rape? So I think there's a list of injuries that the appellant is claiming he sustained. But what I'm trying to focus on is that the nurse, there is no allegation that the nurse did not treat his immediate injuries. He actually stated that she did provide him with a physical evaluation. Okay, let's go to ER 159. This is the Third Amendment complaint. Defendant Yamazaki intentionally refused to conduct an adequate examination, conduct a sexual assault kit used to detect DNA and other evidence of a sex violent victim. To accurately note plaintiff's injuries, which include head trauma, contusions, severe head bleeding, discomfort, clouded eyes, dizziness, plaintiff's old injury in the arm that was re-injured, which is suffering severe pain, numbness, left forearm, weakness of the left hand grip, traumatic emotional distress from the rape that he suffered. I'm so unclear on what symptoms do you think Mr. Medina did not disclose to Defendant Yamazaki? I'm not saying that he did disclose some of those symptoms to Nurse Yamazaki. What I am trying to provide is that the nurse did physically evaluate him, which is admitted by the appellant, and that she was taking notes when she was physically examining him. I think the allegation for him is that he just was not properly treated. He just concludes, I was not properly treated. There are no facts to support how he was not properly treated by the nurse. So if we look at Gordon factors, one of the factors is that there has to be causation. All right. And was, but I don't see any allegations that Nurse Yamazaki caused plaintiff's injuries. So is that, is that what the district court relied on? What, how did the district court say to find in favor of the nurse? The district court relied on the fact that the the allegations contained in appellant's complaint was not sufficient because it did provide that the nurse physically evaluated the appellant and that the nurse was taking notes. And all, and what amounted to the district court's ruling was that this did not rise to the level of a constitutional violation. If anything, it amounted to medical negligence at best. And so I think that was what the court relied on in the underlying complaint. Doesn't Gordon require a causation factor? Yes, it does. And so there, just to touch upon the Gordon factor as to the fourth element, it requires that the appellant must show that the nurse did not take certain measures causing the injuries. There is nothing in the complaint that says that this nurse caused him any injuries. It is clear that he received his injuries from an attack by other prisoners, that the nurse treated him or at least physically evaluated him, took notes and tried to, and there's no indication that she did not properly treat him except for the conclusory statement that she did not properly treat him. But in McGuckin, didn't we hold that delay that causes pain and anguish constitutes harm for a Section 1983 claim? If you look at, you know, Jet v. Penner, everything says the harm need not be substantial. Delay, you know, that causes unnecessary wanton infliction of pain, that's Hunt, can constitute and satisfy the fourth element. And here he alleges that not treating, particularly the arm, and including not treating the rape, resulted in rectal bleeding for 10 months, that his arm pain worsened from not being treated. So why wouldn't that pain caused by delay of treatment not satisfy the fourth element of Gordon? I don't think that the appellant alleged that the nurse caused any of the injuries to begin with, and then as far as the delay or in treatment, the appellant never alleges that in his complaint, that due to his lack of treatment by the nurse, that he suffered any harm or further injuries. But by injuries, the case law says that having pain from delay of treatment can be an injury that's cognizable under the fourth element of Gordon. Yes, Your Honor, but I would argue that the appellant did not provide that in his complaint. He does not say that he suffered any injuries or harm or delay in treatment by the appellant. I mean, I'm sorry, the nurse. Well, I'm looking at the first cause of action. He says, as a direct result of these defendants' violations of Planned Constitutional Rights, he has suffered pain and suffering, emotional distress, and other injuries from their failure to provide plaintiff with the necessary and required safety and medical needs. I mean, this was a pro se litigant. We should be construing it liberally. You think that's insufficient? Your Honor, I think that that's just a generalized statement of what he says as far as he has numerous claims in his complaint, and he says, you know, this resulted in my pain and suffering. So, counsel, your friend on the other side is asking us to look at the MSJ ruling, which isn't before us. Do you want to respond to that? Yes, Your Honor. Appellant claims that if this court reverses the issue of deliberate indifference for the nurse for procedural reasons, the court should also reverse the trial court entering judgment in favor of the officers for failure to exhaust his administrative remedies. But that's not before us, is it? No, I would argue that it's not before you. I would state that the appellant conceded that there was no argument as to whether the trial court erred in any way regarding the MSJ ruling at all. There has to be some sort of authority or basis for an appeal, and here the argument was well, if the court decides to reverse on Nurse Yamasaki's ruling, then the court should reverse on the MSJ. But there is no, the fact that Nurse Yamasaki, if it were to go back down to the trial court, there is no indication that she would even defend on the basis of PLRA. That's based on pure that this would be one of the defenses. But secondarily, if Nurse Yamasaki was to argue PLRA, that would not foreclose her ability to then argue what was insufficient as far as Nurse Yamasaki goes. Can I ask you about one more statement in a third amendment complaint? It says the defendants cause the plaintiff's injuries, pain and suffering, and arbitrarily refuse to document and provide medical healthcare services. Is the government's position that that's not sufficient because it doesn't explicitly say the delay caused the pain and suffering? I'm just wondering what, I assume you think that's still insufficient as an allegation for the fourth element of Gordon, is that right? Yes. Okay. And what is it that's, it doesn't, what is deficient about it? It doesn't explicitly reference delay? No, your honor. I think that when there's a generalized statement that there's pain and suffering, I've, I've, I've been caused pain and suffering from, you know, the number of defendants or appellees that were in contained in that complaint. A generalized statement is not sufficient. I think that the, the complaint was very clear in that he was making his allegations in that complaint in essentially the third amended complaint with paragraphs 26 and 27. He speaks about Nurse Yamasaki, what he, how he presented to her, what his experience was with at that time. And that was it. The other statements that he made as far as generalized pain and suffering, that was as to all of his claims as far as numerous defendants and numerous claims that he made in his complaint. But which is the defendant that would have refused medical care? Not the correctional officers, right? It would have been Nurse Yamasaki. Yes. And so I would just direct your attention back to the incident report that was provided by the appellant, is that the Nurse Yamasaki was the one that treated him 10 months later after the incident. And so I would just ask the court to incorporate by reference the appellant's own exhibits that he provided in his complaint. All right. If, does anyone have any additional questions? No, thank you. All right. We've taken you over, but by the time we give extra time, both ways, it'll be about even. So. Thank you for your time, your honors. I just want to make a few quick points. First, as to the injury, if you look at extra record 154 of his third amendment complaints, paragraph 16, as Nurse Yamasaki, he alleges that her actions caused unnecessary want and affliction of pain. So that's directly to the nurse. In addition, essentially, Mr. Medina is showing up bleeding, he's injured, and there's no treatment. And that treatment, the lack of treatment causes further, it's very logical that it causes further harm, you know, infection, bleeding, you have the specter of infectious disease, and that's very logical to infer. And at the pro se pleading standard, this complaint should only be dismissed if it's beyond doubt that the plaintiff can prove no set of facts. And I think they've no, they didn't, the appellees didn't make any effort to show that it's beyond doubt, that no set of facts can be proved. In addition, if we are looking at the attachments, there's doctor's notes about a wrist injury that even two years later, he's still complaining about. And that's due to the, that's due to the attack and also due to the lack of care that he got in seeing that. So I think if you are considering some of that, those attachments, there's other evidence of continuing injuries that last far beyond the 10 months. And I appreciate the court's questions about all the attachments to the complaints. And I think they're excellent questions, but these weren't raised by the appellees. These weren't briefed. So if you're honored, if you're, this is a big concern for the court, I would be happy to provide further briefing about what to do with these exhibits to the complaints. And I think it would be very helpful as a truth seeking matter. I think ultimately, if we really want to come down to what this case is about, I think it should be remanded for discovery. We can exactly figure out who did what and when on a proper timeline. And here we're speculating on a very incomplete record on the pro se complaint with some attachments. I think that's not sufficient to dismiss at a Rule 12c stage. I think summary judgment is appropriate for this timeline issue and the nurse issue. And I appreciate the court's time with this case. Thank you very much. Thank you both for your helpful argument in this matter. And once again, thank you on behalf of the court in its entirety for doing pro bono work for the court. This matter will stand submitted.
judges: CALLAHAN, OWENS, KOH